GLYNN, FINLEY, MORTL,
HANLON & FRIEDENBERG, LLP
ADAM FRIEDENBERG, Bar No. 205778
DAWSON P. HONEY, Bar No. 347217
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975
afriedenberg@glynnfinley.com
dhoney@glynnfinley.com

Attorneys for Defendant
ADT LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company, and CARMEL VI CLAIM, LLC, a Colorado limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ADT LLC, a Delaware limited liability company, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 4:25-cv-01453-JST<br><br>[Removed from Marin County Superior Court, Case No. CV0004999]<br><br>**DEFENDANT ADT LLC'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  May 22, 2025<br>Time:            2:00 PM<br>Courtroom:    6<br>Judge:          Hon. Jon S. Tigar |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE, that on May 22, 2025, at 2:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jon S. Tigar, Defendant ADT LLC ("ADT") will bring on for hearing this motion for an order transferring this case to the United States District Court for the Eastern District of New York (the "EDNY").

ADT moves to transfer under 28 U.S.C. § 1404(a) on the ground that the proper forum for these proceedings is the Eastern District of New York. That court has retained jurisdiction and established procedures to resolve disputed matters arising out of the class settlement agreement in *In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation*, No. 1:05-md-01720-MKB-JO. Plaintiffs' claims in the case at bar contest the parties' rights concerning proceeds to be distributed pursuant to that class settlement, and indeed the parties are actively contesting such issues within the claims administration process established by the EDNY.

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the Declarations of Adam Friedenberg and Daniel J. McGrath and exhibits attached thereto, any oral argument as may be presented at the hearing, and on all other papers, records, pleadings on file in this case, and any additional evidence and argument that the Court may allow prior to and during the hearing on this motion.

Dated: March 6, 2025

GLYNN, FINLEY, MORTL,
HANLON & FRIEDENBERG, LLP
ADAM FRIEDENBERG
DAWSON P. HONEY


By_____/s/ Adam Friedenberg_____
    Attorneys for Defendant
    ADT LLC

- 1 -
DEFENDANT ADT LLC'S MOTION TO TRANSFER

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................... 2

        A.      The EDNY Litigation Commences in 2005 ....................................... 2

        B.      The First Settlement Agreement Is Entered and Approved In 2012 ...................... 2

        C.      Cascade and ADT Enter the Asset Purchase and Sale Agreement ........................ 3

        D.      The Second Circuit Reverses the Settlement Approval and Decertifies the Settlement Class .............................................................. 3

        E.      ADT Merges with Protection One Alarm Monitoring, Inc. .................................... 4

        F.      A Second Class Settlement Is Approved in 2019 ................................ 4

        G.      The EDNY Retains Jurisdiction over the Settlement Agreement ......................... 5

        H.      ADT and Cascade File Conflicting Claims Within the EDNY-Administered Claims Process .......................................................... 6

        I.      Plaintiffs File the Instant Litigation ...................................................... 7

III.    ARGUMENT ............................................................................................... 7

        A.      Transfer is Warranted on the Basis that the EDNY's Retention of Jurisdiction Acts as a Forum Selection Clause. ........................................... 7

        B.      In the Alternative, a Transfer to the EDNY Is Warranted Because the Section 1404(a) Factors Tip Towards Transfer. ................................... 10

                1.  Jurisdiction is proper in the Eastern District of New York............................ 10

                2.  The interests of justice and judicial economy strongly favor transfer. ........... 11

                3.  The private factors favor transfer or are neutral. ........................................... 14

IV.     CONCLUSION............................................................................................ 16

DEFENDANT ADT LLC'S MOTION TO TRANSFER

1

## TABLE OF AUTHORITIES

2

3    <u>CASES</u>

4    *Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for Western Dist. of Texas*
5        571 U.S. 49 (2013) ................................................................................. 8, 10, 14

6    *Baton v. Ledger SAS*
        740 F. Supp. 3d 847 (N.D. Cal. 2024) ............................................................ 9

7    *Boys v. Mass Mut. Life Ins. Co.*
8        No. 2:12-CV-445, 2013 WL 3834010 (E.D. Tenn. July 24, 2013) .................................. 13

9    *Callaway Golf Co. v. Corp. Trade Inc.*
        No. 09CV384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) .............................. 12

10
11   *Chess v. Romine*
        No. 18-CV-05098-JSC, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018) ............................ 15

12   *Consol. Res. Co. LLC v. Apache Corp.*
        No. CIV-23-1166-G, 2024 WL 5063260 (W.D. Okla. Aug. 26, 2024) ........................... 13
13
14   *Cung Le v. Zuffa, LLC*
        108 F. Supp. 3d 768 (N.D. Cal. 2015) ........................................................... 12

15   *Decker Coal Co. v. Commonwealth Edison Co.*
        805 F.2d 834 (9th Cir. 1986) ................................................................... 10
16
17   *Duffy v. Facebook, Inc.*
        No. 16-CV-06764-JSC, 2017 WL 1739109 (N.D. Cal. May 4, 2017) ............................ 11

18
     *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*
19       953 F.3d 660 (10th Cir. 2020) ................................................................... 7

20   *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*
        62 F.4th 704 (2d Cir. 2023) ...................................................................... 4
21
     *Flanagan v. Arnaiz*
22       143 F.3d 540 (9th Cir. 1998) ............................................................... 7, 8, 11

23   *Gaub v. Wal-Mart Stores, Inc.*
        No. 12-80654-CIV, 2012 WL 5411220 (S.D. Fla. Nov. 6, 2012) ................................. 13
24
     *Hawkins v. Gerber Prods. Co.*
25       924 F. Supp. 2d 1208 (S.D. Cal. 2013) ...................................................... 12, 14

26   *Hernandez v. Graebel Van Lines*
        761 F. Supp. 983 (E.D.N.Y. 1991) ............................................................... 15
27

28

1

**TABLE OF AUTHORITIES**
Continued

*Hoffman v. Blaski*
    363 U.S. 335 (1960) ........................................................................................ 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
    827 F.3d 223 (2d Cir. 2016) ............................................................................ 2

*In re Visa Check/Mastermoney Antitrust Litig.*
    No. CV-96-5238 (JG), 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) ........... 14

*Koehler v. Green*
    358 F.Supp.2d 346 (S.D.N.Y.2005) ........................................................ 12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ........................................................................................ 11

*Lee v. Fisher*
    70 F.4th 1129 (9th Cir. 2023) ........................................................................... 9

*Lou v. Belzberg*
    834 F.2d 730 (9th Cir. 1987) ........................................................................... 15

*Metz v. U.S. Life Ins. Co. in City of New York*
    674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................................................... 15

*Omnicell, Inc. v. Medacist Sols. Grp., LLC*
    272 F.R.D. 469 (N.D. Cal. 2011) ............................................................ 7, 9, 13

*Pac. Car & Foundry Co. v. Pence*
    403 F.2d 949 (9th Cir. 1968) ........................................................................... 14

*Ponomarenko v. Shapiro*
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ............................................................ 10

*Rabbi Jacob Joseph School v. Province of Mendoza*
    342 F. Supp. 2d 124 (E.D.N.Y. 2004) ............................................................ 12

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*
    119 F.3d 1559 (Fed. Cir. 1997) ....................................................................... 12

*Rowen v. Soundview Commc'n, Inc.*
    No. 14-cv-05530, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ...................... 10

*Sharpe v. Select Portfolio Servs., Inc.*
    No. CV-2011-01436-PHX, 2012 WL 6570910 (D. Ariz. Dec. 17, 2012) ....... 13

*Speedfit LLC v. Woodway USA, Inc.*
    642 F. Supp. 3d 429 (S.D.N.Y. 2022) ............................................................. 13

DEFENDANT ADT LLC'S MOTION TO TRANSFER

1

## <u>TABLE OF AUTHORITIES</u>
Continued

2

3

*Van Dusen v. Barrack*
    376 U.S. 612 (1964) ............................................................................................. 12

4

5

*Wiley v. Trendwest Resorts, Inc.*
    No. C 04-4321 SBA, 2005 WL 1910934 (N.D. Cal. Aug. 10, 2005) ............................. 14

6

*Willoughby v. Potomac Elec. Power Co.*
    853 F. Supp. 174 (D. Md. 1994) ......................................................................... 13

7

8

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ........................................................................................... 12

9

*Yei A. Sun v. Advanced China Healthcare, Inc.*
    901 F.3d 1081 (9th Cir. 2018) ............................................................................... 9

10

*Zone Sports Ctr., Inc. LLC v. Red Head, Inc.*
    No. 110CV01833AWISMS, 2011 WL 13152741 (E.D. Cal. Feb. 7, 2011) ..................... 8

11

12

13

## <u>STATUTES</u>

14

United States Code (U.S.C.)
    Section 1391(b) .................................................................................................. 11
    Section 1404(a) ........................................................................................... *passim*

15

16

17

## <u>RULES</u>

18

Federal Rule of Civil Procedure (F.R.C.P.)
    Rule 23(b)(2) ....................................................................................................... 2
    Rule 23(b)(3) ........................................................................................... 2, 4, 5, 6
    Rule 53(c) ............................................................................................................ 6

19

20

21

22

23

24

25

26

27

28

DEFENDANT ADT LLC'S MOTION TO TRANSFER

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3       This case springs from the long pending (and ongoing) antitrust proceedings in the

4 Eastern District of New York ("EDNY") known as *In re: Payment Card Interchange Fee and*

5 *Merchant-Discount Antitrust Litigation*, No. 1:05-md-01720-MKB-JO (the "EDNY Litigation").

6 Defendant ADT LLC ("ADT") is a class member in the EDNY Litigation.  In 2013, ADT and

7 Plaintiff Cascade Settlement Services LLC ("Cascade") entered a written contract under which

8 ADT sold its interest in the class recovery for a class period running from January 2004 through

9 November 2012.  That class period was established by a 2012 class settlement agreement that the

10 EDNY had previously approved, and which provided explicitly that any dispute concerning the

11 class settlement was subject to the continuing and exclusive jurisdiction of the EDNY.

12       In 2016, the Second Circuit Court of Appeals reversed the class settlement approval and

13 decertified the damages and injunctive classes.  Then, in 2017, ADT merged with a company

14 known as Protection One Alarm Monitoring, Inc. ("Protection One"), which was separately a

15 class member in the EDNY Litigation.  In 2019, a new class settlement was reached and

16 approved, based on a new class period of January 2004 through January 2019.  Plaintiffs'

17 position in this suit is that it had acquired Protection One's interest in the 2019 settlement from

18 ADT in 2013, even though such an acquisition was not remotely contemplated by the parties and

19 ADT did not merge with Protection One until four years after 2013.  Plaintiffs are also taking the

20 same position in an active and ongoing dispute process within the EDNY, where this case should

21 likewise proceed.

22       The instant motion does not ask the Court to resolve the merits of the dispute, only to

23 transfer it to its proper forum.  In its Order approving the 2019 settlement agreement, the EDNY

24 retained exclusive jurisdiction to "enforce the Superseding Settlement Agreement . . . including

25 any disputes relating to, or arising out of . . . any claim for payment."  Declaration of Adam

26 Friedenberg ("Friedenberg Decl.") Ex. A.  Indeed, the parties are actively contesting their

27 dispute before the EDNY-appointed Class Administrator, subject to judicial review by District

28 Judge Brodie of the EDNY.  Under clear authorities of the United States Supreme Court, the

1  Ninth Circuit and prior decisions of the Northern District of California, the EDNY's retention of

2  jurisdiction compels transfer of this action to that District, as does the traditional convenience

3  analysis under 28 U.S.C. section 1404(a). Accordingly, ADT respectfully submits that the Court

4  should grant this motion and transfer this dispute to the EDNY, where the parties' parallel

5  dispute is already pending.

6  **II.    FACTUAL BACKGROUND**

7       **A.    The EDNY Litigation Commences in 2005**

8       In 2005, various antitrust suits against Visa and Mastercard, as well as various issuing

9  and acquiring banks, were consolidated as a multi-district litigation in the Eastern District of

10  New York. Friedenberg Decl. Ex. B (EDNY Litigation, Dkt No. 7363 at 1). The MDL plaintiffs

11  alleged that the defendants engaged in various unlawful practices that resulted in excessive

12  transaction fees (known as "interchange fees") on each card transaction. *Id.* at 1-2. As a

13  merchant that accepts Visa and MasterCard branded credit and debit cards, ADT was a class

14  member. *Id.* at 28; Declaration of Daniel J. McGrath ("McGrath Decl.") at ¶ 2.

15       **B.    The First Settlement Agreement Is Entered and Approved In 2012**

16       In 2012, the representative plaintiffs and the defendants in the EDNY Litigation entered

17  into a comprehensive class settlement agreement (the "First Settlement Agreement").

18  Friedenberg Decl. Ex. C (EDNY Litigation, Dkt No 7257-2 at 6). On October 19, 2012, the

19  parties filed a motion for preliminary settlement approval, which also sought certification of two

20  settlement classes under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2): an opt-out

21  damages class covering the period January 1, 2004, through November 28, 2012, and a non-opt-

22  out injunctive class covering the period from November 28, 2012 onwards. *In re Payment Card*

23  *Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 229 (2d Cir. 2016).

24       On November 27, 2012, the EDNY certified the settlement classes and preliminarily

25  approved the First Settlement Agreement. *In re Payment Card Interchange Fee & Merch. Disc.*

26  *Antitrust Litig.*, 827 F.3d at 229. On December 13, 2013, the EDNY entered an order finally

27  approving the First Settlement Agreement. *Id.* The final approval order confirmed the damages

28  and injunctive class periods. *Id.* Moreover, the approved First Settlement Agreement provided

1    that the EDNY retained "continuing jurisdiction . . . to implement, administer, consummate, and

2    enforce this Class Settlement Agreement."  Friedenberg Decl. Ex. D (EDNY Litigation, Dkt. No.

3    1656-1 at 96-97).

4        **C.    Cascade and ADT Enter the Asset Purchase and Sale Agreement**

5        On December 20, 2013, seven days after the final approval order, Cascade and ADT

6    entered into an Asset Purchase and Sale Agreement (the "APSA").  (Dkt. 1 Ex. C at 42.)  The

7    instant litigation is a dispute over what exactly the parties understood to be the bargained-for

8    asset.  ADT's position is that the parties' mutual understanding was that ADT sold, and Cascade

9    acquired, the "Asset" ADT owned at the time of the agreement:  i.e., its interest in the class

10   settlement that had been approved.  Indeed, the APSA defines the "Asset" by reference to the

11   then-extant Second Amended Class Action Complaint, the settlement of which sought recovery

12   for the class period of January 1, 2004, through the settlement's preliminary approval date

13   (November 27, 2012).  Dkt. 1 Ex. A ¶ 20; *see* Friedenberg Decl. Exs. D, E (EDNY Litigation,

14   Dkt. No. 1656-1 at 171, Dkt. 6124 at 6 n.1).  Cascade alleges that it acquired a much broader

15   interest.

16       ADT did not enter any agreement with Plaintiff Carmel VI Claim, LLC ("Carmel").

17   Rather, Plaintiffs allege that Carmel and Cascade have a separate agreement by which Carmel

18   purchased from Cascade the latter's interest in ADT's settlement recovery.  Dkt. No. 1, Ex. A at

19   ¶¶ 44-46.

20       **D.    The Second Circuit Reverses the Settlement Approval and Decertifies**
21           **the Settlement Class**

22       Various objectors and opt-out plaintiffs appealed the certification and settlement approval

23   orders.  Friedenberg Decl. Ex. B (EDNY Litigation, Dkt. No. 7363 at 7).  On June 30, 2016, the

24   Second Circuit Court of Appeals ruled in appellants' favor, reversed the settlement approval, and

25   vacated the class certification order.  *Id.* at 2, 7.

26   ///

27   ///

28   ///

**E.    ADT Merges with Protection One Alarm Monitoring, Inc.**

Protection One merged into ADT in March 2017.  Dkt. No. 1 Ex. A ¶ 47.  Protection One was also a class member in the EDNY Litigation, and thus had its own potential claim in the event of a subsequent settlement or recovery.  Cascade's position in the instant suit is that it acquired any such claim from ADT via the 2013 APSA.  *Id.* ¶ 49.  ADT contends that the parties could not have made such an agreement in 2013, given that ADT did not own or have any interest in Protection One in 2013 or for years after.  That dispute is the crux of the current litigation.

**F.    A Second Class Settlement Is Approved in 2019**

Following remand from the Second Circuit, on March 31, 2017, the class plaintiffs filed a Third Amended Complaint that sought class certification pursuant only to Federal Rule of Civil Procedure 23(b)(3).  Friedenberg Decl. Ex. B (EDNY Litigation, Dkt. No. 7363 at 10, 18). On or about June 7, 2018, the parties reached a second settlement agreement (the "Superseding Settlement Agreement") for a class period of January 1, 2004, through the settlement preliminary approval date (January 24, 2019).  *Id.* at 12.  The EDNY issued its order finally approving the Superseding Settlement Agreement and certifying the settlement class on December 13, 2019.  *Id.* Ex. A (EDNY Litigation Dkt. 7818).  The Second Circuit affirmed the settlement on March 15, 2023.  *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 714 (2d Cir. 2023).

The Superseding Settlement Agreement set out a detailed and thorough process for claim determination and approval.  Friedenberg Decl., Ex. C (EDNY Litigation, Dkt. 7257-2).  The settlement fund was to be as large as $6.26 billion but not less than $5.56 billion.  *Id.* Ex. F (EDNY Litigation, Dkt. 7257-1 at 10).  The Plan of Administration and Distribution provides that the Class Administrator (Epiq Systems, Inc.) is responsible for the receipt of claims and the distribution of funds (the "Plan").  *Id.* Ex. C (EDNY Litigation, Dkt. 7257-2 at 263, Appendix I – Plan of Administration and Distribution).  The Plan was incorporated within the Superseding Settlement Agreement approved by the EDNY.  *Id.* Ex. A (EDNY Litigation, Dkt. 7818 at 3).

Under the Plan, the Class Administrator determines each class member's share of the

1   settlement fund on a *pro rata* basis depending on the number of transactions each class member

2   had with the defendants during the class period. *Id.* Ex. C (EDNY Litigation, Dkt. 7257-2 at

3   264-65). Claimants to the settlement fund must submit a "Claim Form" to the Class

4   Administrator outlining the estimated payment card fees that are believed to be covered by the

5   settlement. *Id.* at 272. The Class Administrator then must review the card transactions

6   submitted by claimants and "determine the amount of [card fees] . . . attributable to the class

7   members . . . during the Class Period based on the best available information or a reasonable

8   estimate[.]" *Id.* at 264. The Plan established that "[d]istribution will be made to Claimants . . .

9   after substantially all claims have been processed and approved by the Court." *Id.* at 264-65.

10       The Plan included a detailed protocol for disputing the calculations of the Class

11   Administrator and the procedure for submitting claims. *Id.* at 275-76. The Class Administrator

12   would determine whether the claim should be denied, or approved, and what amount is owed if

13   approved. *Id.* Claimants could then challenge the Class Administrator's estimate of the

14   interchange fees paid, then appeal the Class Administrator's determinations to the Rule 23(b)(3)

15   Class Counsel and subsequently the District Court. *Id.*

16       **G.**    **The EDNY Retains Jurisdiction over the Settlement Agreement**

17       In its Order finally approving the Superseding Settlement Agreement, the EDNY

18   explicitly retained jurisdiction over the implementation of the settlement and required that class

19   members submit to the exclusive jurisdiction of the court, including to adjudicate any claims

20   disputes. Friedenberg Decl. Ex. A (EDNY Litigation Docket No. 7818). The Superseding

21   Settlement Agreement provides that the EDNY "will retain continuing jurisdiction . . . to . . .

22   enforce this Superseding and Amended Class Settlement Agreement" and that class members

23   "submit irrevocably to the exclusive jurisdiction of" the EDNY. *Id.* Ex. C (EDNY Litigation

24   Docket No. 7257-2 at 59-60). Likewise, the EDNY's final Order approving the Superseding

25   Settlement Agreement provides that

26             this Court retains continuing jurisdiction . . . to implement, administer,
                consummate, and enforce the Superseding Settlement Agreement . . .

27             including any disputes *relating to, or arising out of* . . . *any claim* for
                payment from the Class Settlement Cash Escrow Account. . . .

28             [Class members] *irrevocably submit* to the *exclusive jurisdiction* of this

DEFENDANT ADT LLC'S MOTION TO TRANSFER

1    Court for the resolution of *any matter* covered by the Superseding
Settlement Agreement, this Rule 23(b)(3) Class Settlement Order and

2    Final Judgment, or the applicability of the Superseding Settlement
Agreement or this Rule 23(b)(3) Class Settlement Order and Final

3    Judgment.  ***All applications to the Court with respect to any aspect of the***
***Superseding Settlement Agreement or this Rule 23(b)(3) Class***

4    ***Settlement Order and Final Judgment shall be presented to and***
***determined by United States District Court Judge Margo K. Brodie for***

5    ***resolution as a matter within the scope of MDL 1720, or, if she is not***
***available, any other District Court Judge designated by the Court.***

6

7    Friedenberg Decl. Ex. A (EDNY Litigation, Dkt. No. 7818 at 14-15 (emphasis added)).

8         In August 2023, the EDNY appointed a Special Master to help "resolve any disputes or

9    matters arising out of or relating to the Plan of Administration and Distribution."  *Id.* Ex. G

10    (EDNY Litigation, Dkt. No. 8883 at 2).  The EDNY granted the Special Master "the authority

11    specified in Rule 53(c) with respect to those disputes and matters" and ordered that "[m]atters

12    arising out of or relating to the Settlement Agreement's Plan of Administration and its claims

13    process shall be raised in the first instance with the Class Administrator" who may "address the

14    matter or refer it to the Special Master for resolution."  *Id.*  The EDNY subsequently issued a

15    revised Special Master order that established a "dispute-specific miscellaneous docket" as well

16    as a "master miscellaneous docket" where the Special Master's reports and recommendations are

17    cataloged, organized, and reviewed by the District Court.  *Id.*  Ex. H (EDNY Litigation, Dkt. No.

18    9403 at 2-3).

19        **H.**    **ADT and Cascade File Conflicting Claims Within the EDNY-**
                  **Administered Claims Process**

20

21         This dispute arose in June 2024, when ADT and Cascade began filing conflicting claims

22    before the Class Administrator in the EDNY concerning the Protection One claim.  McGrath

23    Decl. at ¶ 3, Ex. A.  Pursuant to the EDNY-ordered retention of jurisdiction and claims

24    procedure, Cascade (through its agent, Spectrum Settlement Recovery) filed a claim to the Class

25    Administrator as required.  *Id.*  Similarly, ADT (through its agent, Financial Recovery Strategies

26    ("FRS")) filed a conflicting claim submitted by Cascade.  *Id.*  The conflict is identical to that

27    alleged by Cascade in its Complaint in this action:  a dispute over whether the Protection One

28    claim is subject to the 2013 APSA between Cascade and ADT.  *Compare* McGrath Decl., Ex. A

*with* Dkt. No. 1 Ex. A ¶¶ 47-55.

Pursuant to the Superseding Settlement Agreement and the EDNY's Order, the parties attempted to resolve the dispute before the Class Administrator, who placed ADT's claims in "conflicted status." McGrath Decl. at ¶ 4. Cascade and ADT, through their respective agents, initiated the appeal process before the Class Administrator on June 4, 2024. *Id.* That appeal is ongoing. *Id.* at ¶¶ 4-5. Thus, the parties are actively litigating the conflict within the EDNY-administered process. Friedenberg Decl. Ex. A, C (EDNY Litigation, Dkt. Nos. 7818 at 3, 7257-2 at 274-75). Per the EDNY's Order of August 3, 2023, upon a determination by the Class Administrator, the losing party will have a right of appeal to the Special Master and District Court. Friedenberg Decl. Ex. H (EDNY Litigation, Dkt. No. 9403 at 2).

## I.   Plaintiffs File the Instant Litigation

Despite the ongoing litigation within the EDNY, on January 7, 2025, Cascade and Carmel filed the instant suit in the California Superior Court for the County of Marin. Dkt. No. 1 Ex. A. ADT removed the case was removed to this Court on February 12, 2025. Dkt. No. 1.

## III.   ARGUMENT

### A.   Transfer is Warranted on the Basis that the EDNY's Retention of Jurisdiction Acts as a Forum Selection Clause.

The Ninth Circuit and this District have previously held that a court's retention of jurisdiction operates similarly to a forum selection clause and is entitled to substantial deference. *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 475 (N.D. Cal. 2011); *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998). In *Omnicell*, Judge Koh noted that the federal courts "treat jurisdictional retention provisions identically to private forum selection clauses or [] treat both types of provisions as a factor appropriately considered under a discretionary § 1404(a) transfer analysis." *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 475 (N.D. Cal. 2011); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 674 (10th Cir. 2020) (holding that a "retention of jurisdiction provision be interpreted like an ordinary contract"). In *Flanagan*, the Ninth Circuit gave substantial deference to a court's retention of jurisdiction by holding that "[t]he context of the retention of jurisdiction . . . implies that the retention was

1    meant to be exclusive." *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998).

2        The Supreme Court has held that for purposes of a motion to transfer pursuant to section

3    1404(a) the existence of a "valid forum-selection clause [should be] given controlling weight in

4    all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. United States Dist. Ct.*

5    *for Western Dist. of Texas*, 571 U.S. 49, 63 (2013) (citations omitted).  Thus, "a valid forum-

6    selection clause requires the district courts to adjust their usual section 1404(a) analysis in three

7    ways." *Atlantic Marine*, 571 U.S. at 63.  First, the plaintiff's choice of forum "merits no

8    weight." *Id.*  Rather, the burden shifts to the plaintiff to show why the action should not be

9    transferred to the preselected forum. *Id*. at 63-64.  Second, the Court "must deem the private-

10    interest factors to weigh entirely in favor of the preselected forum." *Id*. at 64.  "Third . . . when a

11    party bound by a forum-selection clause flouts its contractual obligation and files suit in a

12    different forum" this may, in some circumstances, affect public-interest considerations based on

13    choice-of-law rules. *Id.* at 64-65.  However, "when [the filing of a case in a different

14    jurisdiction] stems from enforcement of a forum-selection clause . . . [t]he court in the

15    contractually selected venue should not apply the law of the [initial] venue to which the parties

16    waived their right." *Id* at 65-66.

17        Here, the EDNY "retain[ed] continuing jurisdiction . . . to implement, administer,

18    consummate, and enforce the Superseding Settlement Agreement . . . including any disputes

19    relating to, or arising out of *any claim* for payment."  Friedenberg Decl. Ex. A (EDNY

20    Litigation, Dkt. 7818 at 14-15 (emphasis added).  Class members "irrevocably submit to the

21    exclusive jurisdiction of [the EDNY] for the resolution of any matter covered by the Superseding

22    Settlement Agreement." *Id.*  When the parties have agreed "to litigate disputes in a particular

23    forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*,

24    571 U.S. at 66.  Thus, "[i]n light of the . . . stat[ement] that the [EDNY] retains continuing

25    jurisdiction, it is apparent that Plaintiffs should have filed this case in the [EDNY]." *Zone Sports*

26    *Ctr., Inc. LLC v. Red Head, Inc.*, No. 110CV01833AWISMS, 2011 WL 13152741, at *3 (E.D.

27    Cal. Feb. 7, 2011).

28        Indeed, Plaintiffs' claims all relate to the benefits of the Superseding Settlement

- 8 -

Agreement as to which the EDNY retained exclusive jurisdiction.  Moreover, Cascade and ADT entered the December 20, 2013 APSC *after* the final approval of the First Settlement on December 13, 2013.  Friedenberg Decl. Ex. C (EDNY Litigation, Dkt. No. 7257-2 at 6); Dkt 1 Ex. A ¶ 17.  The First Settlement Agreement likewise provided for the EDNY's retention of jurisdiction.  Friedenberg Decl. Exs. D, E (EDNY Litigation, Dkt. No. 1656-1 at 96, Dkt. 6124 at 7).  Thus, although the APSA does not include an explicit forum-selection clause itself, Cascade was aware of and bound by the EDNY's exclusive jurisdiction at the time it entered the contract at issue with ADT.  *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("forum-selection clauses covering disputes relating to a particular agreement apply to any disputes that reference the agreement or have some logical or causal connection to the agreement. . . . The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract."), *modified on other grounds by Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 898 (N.D. Cal. 2024) ("A forum selection clause is enforceable against a non-party to the agreement when the non-party is a third-party beneficiary of the contract and the non-party and the conduct at issue are 'closely related' to the . . . contract with the forum selection clause.") (citation and quotation marks omitted).

In *Omnicell*, the court noted that a claim arose out of a settlement agreement where the Plaintiff was claiming entitlement to the benefits of that settlement agreement.  *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 477 (N.D. Cal. 2011).  There, and here, because "[Plaintiff] claims to be entitled to the benefits of the settlement . . . it is also bound by the jurisdiction retention provision in the agreement . . . . Thus, the claims brought by [Plaintiff] in this action fall squarely within the retention of jurisdiction by the [EDNY]."  *Id.*  The EDNY retained exclusive jurisdiction over "disputes relating to, *or arising out of* . . . *any claim*[.]" Friedenberg Decl. Ex. A (EDNY Litigation, Dkt. 7818 at 14-15 (emphasis added)).  Plaintiffs are claiming entitlement to the benefits of the Superseding Settlement Agreement, and as such, their claim is subject to the jurisdiction of the EDNY.  Indeed, Plaintiffs have invoked that court's jurisdiction by initiating and actively contesting their claim within the jurisdictional retention.

1    The EDNY's retention of jurisdiction alone is sufficient to justify a motion to transfer.

2    When a case concerns the enforcement of a forum selection clause, section 1404(a) "provides a

3    mechanism for its enforcement." *Rowen v. Soundview Commc'n, Inc.*, No. 14-cv-05530,

4    2015 WL 899294, at *3 (N.D. Cal. Mar. 2, 2015). "[B]ecause the overarching consideration

5    under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-

6    selection clause should be given controlling weight in all but the most exceptional cases."

7    *Atlantic Marine*, 571 U.S. at 63 (cleaned up). So too here. It would intrude on the jurisdiction

8    retained by the EDNY to decide Plaintiffs' or Defendant's rights to the benefits of the

9    Superseding Settlement Agreement.

10   **B.      In the Alternative, a Transfer to the EDNY Is Warranted Because the
              Section 1404(a) Factors Tip Towards Transfer.**

11

12   Because the EDNY's retention of jurisdiction alone requires transfer, the Court's analysis

13   need go no further. *Atlantic Marine*, 571 U.S. at 63. But, even were the Court required to

14   analyze the traditional factors applied under 28 U.S.C. section 1404(a), they too weigh strongly

15   in favor of transfer.

16   To determine if transfer is appropriate, courts first determine whether an action could

17   have originally been brought in the transferee forum and then "consider public and private

18   factors affecting the convenience of the forum." *Decker Coal Co. v. Commonwealth Edison Co.*,

19   805 F.2d 834, 843 (9th Cir. 1986); *Atlantic Marine*, 571 U.S. at 62. Public factors relate to the

20   "interest of justice" and judicial economy whereas the private factors relate to the "convenience

21   of parties and witnesses." *Atlantic Marine*, 571 U.S. at 62 n.6. In applying these factors, the

22   district court weighs "the relevant factors and decide[s] whether, on balance, a transfer would

23   service 'the convenience of parties and witnesses' and otherwise promote 'the interests of

24   justice.'" *Atlantic Marine*, 571 U.S. at 62-63. Here, the relevant factors either weigh in favor of

25   transfer or are neutral.

26   **1.      Jurisdiction is proper in the Eastern District of New York.**

27   As a threshold matter under section 1404(a), this Court must determine whether this

28   action could have been brought in the EDNY. *See Ponomarenko v. Shapiro*, 287 F. Supp. 3d

1   816, 833-34 (N.D. Cal. 2018).  "A district court is one in which an action could have been

2   brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject

3   to personal jurisdiction; and (3) venue would have been proper."  *Duffy v. Facebook, Inc.*, No.

4   16-CV-06764-JSC, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017) (citing *Hoffman v. Blaski*,

5   363 U.S. 335, 343 (1960)).

6       Each requirement is satisfied.  First, the EDNY has diversity jurisdiction, as established

7   by ADT's notice of removal.  Dkt. 1 at 2-4.  Second, ADT is subject to personal jurisdiction in

8   the EDNY by virtue of its contacts to the state of New York and its pursuit of its claim within the

9   EDNY.  McGrath Decl. ¶ 6; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

10  381-82 (1994) (courts are "authorized to embody the settlement contract in its dismissal order or,

11  what has the same effect, retain jurisdiction over the settlement contract"); *Flanagan v. Arnaiz*,

12  143 F.3d 540, 544 (9th Cir. 1998).  Third, venue is proper in the EDNY both because a

13  substantial part of the events or omissions giving rise to the claim occurred there and

14  alternatively because ADT is subject to the personal jurisdiction in the EDNY.  28 U.S.C. §

15  1391(b).

16       **2.      The interests of justice and judicial economy strongly favor transfer.**

17       The EDNY is the proper forum for the resolution of this dispute because it retained

18  jurisdiction over any action "relating to" or "arising out of" the settlement and Defendant

19  submitted to the "exclusive jurisdiction" of that court for "any matter covered" by the class

20  action settlement.  Friedenberg Decl. Ex. A (EDNY Dkt. No. 7818 at 14-15).  Here, a dispute

21  about whether a class member is entitled to recover from a class action settlement fund is

22  squarely within the four corners of the Superseding Settlement Agreement.  Adjudicating the

23  Plaintiffs' claims, especially their claims for declaratory relief, cannot be resolved without

24  exerting authority—retained explicitly by the EDNY—over the Superseding Settlement

25  Agreement.  Indeed, the parties are presently litigating the issue within the EDNY-administered

26  process.  Friedenberg Decl. Ex. A, (EDNY Litigation, Dkt. No. 7818).

27       "The purpose of § 1404(a) is to 'prevent the waste of time, energy, and money and to

28  protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'"

1    *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 773 (N.D. Cal. 2015) (quoting *Van Dusen v.*

2    *Barrack*, 376 U.S. 612, 616 (1964)).  The general "principle that federal courts should adjudicate

3    claims within their jurisdiction yields to considerations of practicality and wise judicial

4    administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  "[C]ourts consistently

5    recognize that the existence of a related action in the transferee district is a strong factor to be

6    weighed with regard to judicial economy, and may be determinative." *Rabbi Jacob Joseph*

7    *School v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004) (citing cases), even

8    where convenience of the parties tilts the other way. *Regents of the Univ. of Cal. v. Eli Lilly &*

9    *Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which

10   includes judicial economy, may be determinative to a particular transfer motion, even if the

11   convenience of the parties and witnesses might call for a different result.").

12       Furthermore, the risk of inconsistent judgments here weighs in favor of transfer.  The

13   disputed claim has no set value until the Class Administrator hears the claims of ADT and

14   determines its *pro rata* share of the total settlement fund.  Dkt. 1 Ex. C at 42.  In other words,

15   Plaintiffs' claim for relief against ADT seeks as damages the amount to which ADT is entitled

16   under the Superseding Settlement Agreement.  This necessarily requires the trier of fact to

17   determine the value of the settlement at issue.  But that determination is reserved to the exclusive

18   jurisdiction of the EDNY, via the Claims Administration process, and then via appeal to the

19   Special Master and/or the District Court itself.  Friedenberg Decl. Exs. C, A, H (EDNY

20   Litigation, Dkt. Nos. 7257-2, 7818, 9403).  Economy and avoidance of inconsistent rulings thus

21   weigh strongly in favor of transfer to the EDNY. *Hawkins v. Gerber Prods. Co.*, 924

22   F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("avoidance of the possibility of inconsistent

23   judgments" favored transfer); *Callaway Golf Co. v. Corp. Trade Inc.*, No. 09CV384 L(POR),

24   2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010) ("centralizing the adjudication of similar cases

25   will . . . avoid the possibility of inconsistent judgments").

26       Courts give considerable weight to judicial economy where a court retains jurisdiction

27   over a class action settlement.  For example, in *Koehler v. Green*, the plaintiffs alleged "breaches

28   of fiduciary duties by the lawyers and law firms who were class and lead class counsel" related

1    to a class action settlement.  *Koehler v. Green*, 358 F.Supp.2d 346, 347 (S.D.N.Y.2005).  The

2    court transferred an action to another district because the transferee court retained jurisdiction

3    over "all matters relating" to the settlement.  *Id.*  The court held that, "[g]iven [the transferee

4    court's] familiarity with and continuing jurisdiction over the matters that form the basis of the

5    instant complaint, the Court finds that transfer of the case . . . pursuant to 28 U.S.C. § 1404(a) is

6    warranted."  *Id.*; *see also Consol. Res. Co. LLC v. Apache Corp.*, No. CIV-23-1166-G,

7    2024 WL 5063260, at *3 (W.D. Okla. Aug. 26, 2024) (transfer granted where "the Eastern

8    District's familiarity with the [] case and settlement, . . . will advance 'the interest of justice' by

9    preventing unnecessary expense and minimizing duplication of resources."); *Omnicell*, 272

10   F.R.D. at 476; *Gaub v. Wal-Mart Stores, Inc.*, No. 12-80654-CIV, 2012 WL 5411220, at *4

11   (S.D. Fla. Nov. 6, 2012); *Willoughby v. Potomac Elec. Power Co.*, 853 F. Supp. 174, 176 (D.

12   Md. 1994); *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 442 (S.D.N.Y. 2022)

13   (reviewing a settlement agreement with a forum selection clause that conferred "exclusive

14   jurisdiction" on the EDNY and granting motion to transfer).

15            Further, the EDNY's familiarity with proceedings that have been ongoing for two

16   decades and involve complicated facts and procedure tilts towards transfer based on judicial

17   economy.  *Boys v. Mass Mut. Life Ins. Co.*, No. 2:12-CV-445, 2013 WL 3834010, at *4 (E.D.

18   Tenn. July 24, 2013) (transferee court had "more than seven years of experience adjudicating

19   claims related to the class settlement.").  "[W]hether Plaintiff may assert a claim under the

20   Settlement Agreement is also a question concerning the interpretation, administration,

21   implementation, effectuation and enforcement of the Agreement . . . . Given the [EDNY's]

22   familiarity with and continuing jurisdiction over the matters that form the basis of Plaintiff[s'] []

23   claim . . . transfer of the case to the [EDNY] is warranted."  *Sharpe v. Select Portfolio Servs.,*

24   *Inc.*, No. CV-2011-01436-PHX, 2012 WL 6570910, at *2 (D. Ariz. Dec. 17, 2012) (internal

25   quotation marks omitted).

26            Finally, the EDNY has previously expressed that it has the authority, and a strong

27   interest, in resolving disputes between class members and third-party claim buyers like Plaintiffs.

28    In a prior antitrust case involving a similar class action settlement, class counsel moved to

1   enjoin a third-party claim purchaser that had used misleading statements to "entice class

2   members . . . to [sell] their claims outright." *In re Visa Check/Mastermoney Antitrust Litig.*, No.

3   CV-96-5238 (JG), 2006 WL 1025588, at *1 (E.D.N.Y. Mar. 31, 2006). The EDNY granted the

4   injunction and held that "[w]here, as here, the District Court retains exclusive jurisdiction over

5   settlement agreements and distribution of settlement funds pursuant to those agreements, it may

6   issue orders necessary to protect the settlement from threats by both parties and non-parties." *Id.*

7   at *4. The EDNY then held that "[b]ecause [the third party]'s contracts with class members

8   *plainly affect the administration of the settlements and the distribution of the settlement funds*,

9   the All Writs Act authorizes the relief sought by Lead Counsel." *Id.* at *5 (emphasis added).

10  The EDNY concluded that "this Court has even greater authority than that necessary to grant the

11  relief sought by the instant motion. It may . . . declare contracts between third parties and class

12  members void." *Id.* The EDNY's previous ruling here emphasizes that third-party claim buyers

13  like Cascade fall squarely within the EDNY's retention of jurisdiction.

14              **3.      The private factors favor transfer or are neutral.**

15              As addressed above, the existence of a forum-selection clause requires that the district

16  court must deem the private-interest factors to weigh entirely in favor of the preselected forum.

17  *Atlantic Marine*, 571 U.S. at 64. Even were the Court required to analyze these factors, they too

18  weigh in favor of transfer.

19              The location of the operative facts, the convenience of the parties, and locations of

20  potential witnesses, all favor transfer or are neutral. *See Wiley v. Trendwest Resorts, Inc.*, No. C

21  04-4321 SBA, 2005 WL 1910934, at *3 (N.D. Cal. Aug. 10, 2005). Defendant is a citizen of

22  Florida and Delaware, so the proximity of Defendant and potential witnesses favors a closer

23  forum than California. McGrath Decl. ¶¶ 7-9. Moreover, Cascade is already actively

24  participating in the EDNY Litigation via its claim submission described above. McGrath Decl.

25  Ex. A. Thus, the Plaintiffs' choice to litigate in California should not be given significant

26  weight. *Hawkins*, 924 F. Supp. 2d at 1215 ("if the transactions giving rise to the action lack a

27  significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given

28  considerably less weight") (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.

1    1968) (a plaintiff's choice of forum commands less consideration where the operative facts have

2    not occurred within the forum)).

3         None of the operative facts relevant to this dispute occurred in California.  Plaintiffs

4    allege in the Complaint that a breach of contract occurred through the following sequence of

5    events:  "Cascade filed the claims it purchased from ADT with the Claims Administrator in the

6    [EDNY Litigation]," ADT's agent "submitted conflicting claims," and "[i]n an email to the

7    Claims Administrator, ADT's Agent claimed that Cascade had not acquired "any and all of

8    [ADT's] right, title and interest" in ADT's settlement share.  Dkt. No. 1 Ex. A at ¶¶  50, 53.  This

9    all occurred before the Class Administrator in the EDNY.  This fact weighs heavily in favor of

10   transfer.  *E.g.*, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[i]f the operative facts have

11   not occurred within the forum and the forum has no interest in the parties or subject matter,

12   [plaintiffs'] choice is entitled to only minimal consideration"); *Metz v. U.S. Life Ins. Co. in City*

13   *of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (holding that "Plaintiff's choice of

14   forum is afforded less deference" where the "operative facts [had] not occurred in the Central

15   District of California and the subject matter of the litigation is not connected to the Central

16   District of California"); *see also Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990-91

17   (E.D.N.Y. 1991) (giving "less significance" to the plaintiffs choice of a forum where the accident

18   occurred in another state, most of the witnesses were in another state, and the only connection

19   with plaintiffs choice of forum was that the plaintiff resided there).

20        Likewise, the importance of Plaintiffs' convenience and choice of forum is diminished by

21   their prior and ongoing participation in the EDNY Litigation.  "[T]ransferring this action to [the

22   EDNY] will not further inconvenience the majority of Plaintiffs because they must travel and

23   litigate in that forum regardless."  *Chess v. Romine*, No. 18-CV-05098-JSC, 2018 WL 5794526,

24   at *6 (N.D. Cal. Nov. 2, 2018).  Plaintiffs have filed and maintain competing claims before the

25   Class Administrator that predate the filing of the instant complaint.  Though Cascade's members

26   are mostly California residents, Dkt. 1 Ex. B, Cascade's participation in EDNY procedures for

27   resolving disputes minimizes any claim of inconvenience stemming from litigating this case in

28   the same forum as the disputed claims.  *See Chess*, 2018 WL 5794526, at *6 (convenience of the

1  parties and witnesses favored transfer where "maintaining their action in this District will require

2  all [but one] Plaintiff[] to fight a two-front war").  Plaintiffs are currently meaningfully

3  participating in the EDNY Litigation, so the net convenience of the parties and witnesses also

4  favors transfer.

5  **IV.    CONCLUSION**

6          The parties are actively contesting their dispute within the claims process administered by

7  the EDNY, subject to its retention of exclusive jurisdiction over such disputes.  There is no basis

8  for Plaintiffs' attempt to invoke the jurisdiction of a second court.  Accordingly, the Court should

9  grant the motion and transfer the action to the EDNY.

10

11          Dated:  March 6, 2025

12                                          GLYNN, FINLEY, MORTL,
                                            HANLON & FRIEDENBERG, LLP
                                            ADAM FRIEDENBERG
13                                          DAWSON P. HONEY

14

15                                          By____/s/ Adam Friedenberg_____
16                                            Attorneys for Defendant
                                              ADT LLC

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ADT LLC'S MOTION TO TRANSFER