UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASCADE SETTLEMENT SERVICES LLC, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ADT LLC,<br><br>        Defendant. | Case No. 25-cv-01453-JST<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: ECF No. 14 |

Before the Court is Defendant ADT LLC's ("ADT") motion to transfer. ECF No. 14. The Court will grant the motion.

## I.    BACKGROUND

### A.    The Visa/Mastercard MDL

In October 2005, multiple class action complaints asserting antitrust claims were filed against the Visa and Mastercard networks as well as various issuing and acquiring banks. *See* ECF No. 14-1 ("Friedenberg Decl.") at 22, Ex. B at 1 n.1. These cases were consolidated into a multi-district litigation in the U.S. District Court for the Eastern District of New York (the "Visa Antitrust Litigation"). *Id.* The merchant plaintiffs alleged that Visa and Mastercard adopted and enforced rules and practices relating to payment cards that injured merchants by allowing Visa and Mastercard to charge supracompetitive fees on payment card transactions. *See id.* at 1–2. In 2012, the representative plaintiffs and the defendants in the Visa Antitrust Litigation entered into a comprehensive class settlement agreement. Friedenberg Decl., Ex. C at 6. The district court granted preliminary approval of the proposed settlement on November 27, 2012, and final approval on December 13, 2013. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 213, 217 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir.

2016).

On June 7, 2018, the parties in the Visa Antitrust Litigation reached a second settlement agreement (the "Superseding Settlement Agreement") for a class period of January 1, 2004, through the settlement preliminary approval date of January 24, 2019. Friedenberg Decl., Ex. B at 12. The Eastern District of New York issued its order finally approving the Superseding Settlement Agreement and certifying the settlement class on December 13, 2019. *Id.*, Ex. A. The Second Circuit affirmed the settlement on March 15, 2023. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 714 (2d Cir. 2023). Relevant here, in the Eastern District of New York's final approval of the Superseding Settlement Agreement, the district court stated that it:

> retains continuing jurisdiction in MDL 1720 over the Rule 23(b)(3) Class Plaintiffs, the members of the Rule 23(b)(3) Settlement Class, and the Defendants to implement, administer, consummate, and enforce the Superseding Settlement Agreement and this Rule 23(b)(3) Class Settlement Order and Final Judgment, including any disputes relating to, or arising out of the release and covenant not to sue of the Rule 23(b)(3) Settlement Class or any claim for payment from the Class Settlement Cash Escrow Account.

Friedenberg Decl., Ex. A ¶ 18.

The Superseding Settlement Agreement set out a detailed, thorough process for claim determination and approval. Friedenberg Decl., Ex. C. The Settlement Plan of Administration and Distribution (the "Plan of Administration"), sets forth the process for submitting claims to the settlement fund. *See id*. The Plan was incorporated within the Superseding Settlement Agreement approved by the Eastern District of New York. *See id.*, Ex. A.

In August 2023, the Eastern District of New York appointed a Special Master to handle the resolution of claims and "any other matters the Court refers to the Special Master." *Id.* at 889, Ex. H ¶ 1. Such claim disputes must "be raised in the first instance with the Class Administrator, except for any specific matter the Court directly refers to the Special Master." *Id.*, Ex. H ¶ 3. Upon receipt of a claim dispute, "[t]he Class Administrator may address the matter or refer it to the Special Master for resolution." *Id.* "If the Class Administrator addresses the matter, any interested party may appeal the Class Administrator's resolution to the Special Master." *Id.* The special master then prepares a report and recommendation regarding the dispute, which is subject

to de novo review by the Eastern District of New York. *Id.* ¶ 4.

**B.     This Litigation**

On December 20, 2013, Cascade Settlement Services LLC ("Cascade") and ADT—a class member of the Visa Antitrust Litigation—entered into an Asset Purchase and Sale Agreement ("APSA"), in which Cascade alleges that it purchased ADT's right to recovery from the settlement fund in the Visa Antitrust Litigation. ECF No. 1 at 15–16 ¶¶ 17, 19 ("Compl.").

In 2017, ADT then merged with a company called Protection One Alarm Monitoring, Inc. ("Protection One"), which was separately a class member in the Visa Antitrust Litigation. *Id.* ¶ 47. The parties here dispute what the bargained-for asset pursuant to the APSA was—and whether by entering into the APSA, Cascade has also acquired entitlement to Protection One's potential claim for recovery from a settlement in the Visa Antitrust Litigation. *See id.* ¶¶ 48–49; ECF No. 14 at 10. "ADT contends that the parties could not have made such an agreement in 2013, given that ADT did not own or have any interest in Protection One in 2013 or for years after," and that the asset it sold was "its interest in the class settlement that had been approved." ECF No. 14 at 9–10. Cascade, on the other hand, contends that its purchase was broader— covering "any and all of [ADT's] right, title and interest in and or associated with, or connected in any manner to, any [monetary recovery] that may arise from the [Visa Antitrust] Litigation." Compl. ¶ 49; *see also* ECF No. 16 at 8.

The APSA contains the following "Recitals," which were expressly incorporated into the agreement, in defining the "Asset" sold by ADT:

> On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-017204G-.10) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court"). If the plaintiffs in the Litigation either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), the Seller may be entitled to a monetary recovery ("Asset"). Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement. If no Settlement Event takes place, the Asset will have no value. . . .
>
> Following a Settlement Event, it is anticipated that the fixed aggregate amount of the settlement will be allocated pro rata among claimants to the settlement proceeds, in a manner to be described in documents approved by the District Court. . . .

3

> The Parties intend to transfer from Seller to Purchaser any and all of the Seller's right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation.
>
> Purchaser desires to purchase the Asset from Seller, and Seller desires to sell the Asset to Purchaser as provided for in this Agreement.

Compl. ¶ 20.

Section 2.1 of the APSA, entitled "Sale and Purchase of Asset," further provides:

> Purchaser agrees to purchase all right, title and interest in the Asset from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser. . . . Following payment of the Purchase Price from Purchaser to Seller and the full execution of this Agreement, the sale shall be final. This sale, and any assignment by Seller hereunder, is without representation or warranty of any kind, express or implied, except as expressly provided in this Agreement.

*Id.* ¶ 21.

The APSA is governed by California law. *See* ECF No. 1 at 42, Ex. C § 7.5 ("Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law rules, principles or provisions of such state or of any other state.").

In June 2024, ADT and Cascade each filed identical—and thus conflicting—claims with the Class Administrator regarding Protection One's settlement claim. ECF No. 14-2, McGrath Decl. ¶¶ 3, Ex. A. According to Cascade, the Class Administrator made an initial determination that Cascade had the right to file the claim for ADT.[1] ECF No. 16 at 15. ADT disputed that determination and indicated that it planned to appeal at least part of that decision to the Special Master and District Court for the Eastern District of New York. *See* ECF No. 14 at 13; ECF No. 16 at 15.

On January 7, 2025, Plaintiffs Cascade and Carmel VI Claim, LLC[2] (together, "Plaintiffs") filed this action in the California Superior Court for the County of Marin. ECF No. 1, Ex. A. ADT removed the case to this Court on February 12, 2025. ECF No. 1.

---

[1] ADT has not contested this fact. *See generally* ECF No. 17.
[2] Carmel did not enter any direct agreement with ADT but instead alleges that it entered into a separate agreement with Cascade by which Carmel purchased from Cascade its interest in ADT's settlement recovery. *See* ECF No. 1, Ex. A ¶¶ 44–46; ECF No. 14 at 9.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where the parties' contract contains a valid forum-selection clause, "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

Generally, in evaluating a motion to transfer under Section 1404(a), the court considers whether venue would be proper in the transferee district, then weighs the convenience of parties, the convenience of witnesses, and the interest of justice. 28 U.S.C. § 1404(a). Where there is a forum-selection clause, however, the plaintiff bears the burden of showing why the court should not transfer the case to the agreed-upon forum, and the court "should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 63-64. "[A] proper application of [Section] 1404(a) requires that a valid forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

## III. DISCUSSION

ADT primarily argues that the underlying dispute here falls under the Superseding Settlement Agreement's jurisdictional retention provision and thus must be transferred to the Eastern District of New York. In making this argument, ADT relies primarily on *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 475 (N.D. Cal. 2011).

In *Omnicell*, the court examined whether the District of Connecticut's retention of jurisdiction for the purposes of enforcing a settlement agreement rendered venue improper in the Northern District of California, where a subsequent action involved a claim to benefits of the settlement. *See id.* at 471–73, 478. The court explained that Ninth Circuit case law distinguished "between 'permissive' forum selection clauses, which establish venue or jurisdiction in a specified court but still permit venue elsewhere, and 'mandatory' forum selection clauses, which require actions to be brought only in the specified court." *Id.* at 473. It further explained that forum

1    selection clauses were by default permissive unless there was some further language indicating the
2    parties' intent to make jurisdiction exclusive. *Id.* But relying on the Ninth Circuit's decision
3    in *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998), the court reasoned that the opposite was
4    true for a jurisdiction retention clause because "a court order exercises judicial authority, while a
5    forum selection clause in a private contract does not. The context of the retention of jurisdiction, a
6    provision for future enforcement of a settlement order, implies that the retention was meant to be
7    exclusive" even without clear language indicating that intent. *Omnicell*, 272 F.R.D. at 476
8    (quoting *Flanagan*, 143 F.3d at 545) (internal quotation marks omitted). The *Omnicell* court thus
9    concluded that it was "reluctant to find the jurisdiction retention provision to be non-exclusive
10   without some specific words or context indicating that retention was not intended to be exclusive,"
11   and held that disputes under the settlement agreement needed to be brought in the court that
12   retained jurisdiction. *Id.* at 476–77.

13       Plaintiffs offer no response to *Omnicell* in their opposition and thus concede the point that
14   *Omnicell* is relevant authority. *See Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701
15   (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her
16   opposition." (collecting cases)). Instead, Plaintiffs argue: (1) the jurisdiction retention clause does
17   not apply here because Plaintiffs are neither members of the Visa Antitrust Litigation Settlement
18   Class nor defendants in that case; (2) the Eastern District of New York has indicated that it has no
19   interest in this lawsuit, as illustrated by the procedural history of the *Optium* case described further
20   below; (3) ADT's interpretation of "relating to, or arising out of" is too broad, and there is no
21   reason for the Settlement Class to bear the cost of this private contract dispute; and (4) if ADT
22   wants the Eastern District of New York to take jurisdiction, it should seek relief directly from that
23   court under the All-Writs Act. *See* ECF No. 16 at 11–14. The Court has considered these
24   arguments, but they are insufficient to overcome the express language of the jurisdiction retention
25   provision in light of *Omnicell* and *Flanagan*.

26       First, while *Plaintiffs* are not members of the Visa Antitrust Litigation Settlement Class,
27   *ADT* and *Protection One* are class members of the Settlement Class such that the Superseding
28   Settlement Agreement's jurisdictional retention clause applies. *See* Friedenberg Decl., Ex. A ¶ 18

(providing that the Eastern District of New York "retains continuing jurisdiction in MDL 1720 over . . . the members of the Rule 23(b)(3) Settlement Class . . . to implement, administer, consummate, and enforce the Superseding Settlement Agreement and this Rule 23(b)(3) Class Settlement Order and Final Judgment, including any disputes relating to, or arising out of . . . any claim for payment from the Class Settlement Cash Escrow Account"). Plaintiffs cite no authority requiring that the plaintiff—or both parties—in a related action must also be a member of the relevant settlement class for a jurisdiction retention clause to apply.

As for Plaintiffs' remaining arguments, they boil down to contending that the Eastern District of New York does not have an interest in this lawsuit or in having the Settlement Class bear the cost of what Plaintiffs believe to be a private contract dispute. In making this argument, Plaintiffs rely heavily on the procedural history in Cascade's litigation with Optium Capital LLC[3] ("*Optium*") to argue that the Eastern District of New York has indicated a lack of interest in lawsuits like this one. Specifically, Plaintiffs argue that the Eastern District of New York declined to involve itself in *Optium*, where it refused to enjoin Cascade's state court lawsuit and found the dispute only tangentially related to the Visa Antitrust Litigation because it did not threaten settlement administration. *See* ECF No. 16 at 12–13.

But *Optium* is readily distinguishable. As ADT points out: (1) unlike here, neither Cascade or Optium was a class member to the Visa Antitrust Litigation, *see Optium*, 348 F.R.D. at 163, 173; (2) whereas the parties here still have pending conflicting claims in front of the settlement administrator, Cascade had withdrawn its conflicting claim with the class administrator in *Optium* such that "there [was] no longer a 'claim conflict' for the Class Administrator or Special Master to resolve in accordance with the Plan of Administration or Order Appointing Special Counsel," *id.* at 166; and (3) the *Optium* court analyzed the issues under the standard for a

---

[3] As relevant here, the Cascade-Optium litigation involved two related cases: (1) an action filed by Cascade against Optium in California Superior Court, which Optium removed to the Northern District of California, and which Judge Beeler subsequently remanded, *Cascade Settlement Servs. LLC v. Optium Cap. LLC*, No. 3:24-cv-05372, ECF No. 38 (N.D. Cal. Oct. 31, 2024); and (2) an action in the Eastern District of New York in which Optium sought to intervene in the Visa Antitrust Litigation and sought an injunction against the California action. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JAM), 348 F.R.D. 151 (E.D.N.Y. Dec. 28, 2024) ("*Optium*").

7

motion to intervene, which requires that the party seeking intervention have a "direct, substantial, and legally protectable" interest in the litigation, *see id.*, and did not address the jurisdiction retention clause, which merely requires that a dispute "relate to" the payment from the Class Settlement. Plaintiffs' reliance on comments made by Judge Beeler at oral argument in the Northern District of California action, ECF No. 16 at 9–10, are unpersuasive because the court's order there remanded the case for lack of subject matter jurisdiction and did not substantively address the motion to transfer the case to the Eastern District of New York or any jurisdiction retention clause. *See Cascade Settlement Servs. LLC v. Optium Cap. LLC*, No. 3:24-cv-05372, ECF No. 38 (N.D. Cal. Oct. 31, 2024).

Plaintiffs' two remaining arguments fare no better. ADT's interpretation of "relating to, or arising out of" tracks the broad application of that language in the forum-selection clause context, which courts have looked to in interpreting jurisdiction retention clauses. *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement. The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract.") (internal citations omitted); *Omnicell, Inc.*, 272 F.R.D. at 475 ("Outside the Ninth Circuit, the few cases the Court has identified appear either to treat jurisdictional retention provisions identically to private forum selection clauses . . . ."). So while the contract dispute here may not appear to relate to the core issues of the Visa Antitrust Litigation, this action does affect the distribution of conflicting claims from the Class Settlement fund such that it is "relating to" the administration of that fund under the jurisdiction retention clause. Finally, although Plaintiffs are correct that ADT *could* seek an injunction directly from the Eastern District of New York under the All-Writs Act to enjoin this action, they provide no authority that ADT *must* do so. On the contrary, *Omnicell* suggests ADT may seek relief through a motion to transfer. *See Omnicell, Inc.*, 272 F.R.D. at 477.

Because the Court finds that the Superseding Settlement Agreement's jurisdictional retention provision applies, the Court does not reach the parties' other arguments regarding transfer under Section 1404(a).

**CONCLUSION**

For the foregoing reasons, the Court grants ADT's motion to transfer. This case is transferred to the Eastern District of New York.

**IT IS SO ORDERED.**

Dated: July 31, 2025



JON S. TIGAR
United States District Judge